**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOT Operating Authority, Inc., <br><br> Plaintiff, <br><br> v. <br><br> DOT Filing and Compliance, and Diana Lrtshikyan, <br><br> Defendants. | Case No. 2:24-CV-03171-SPG-AS <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT [ECF NO. 29] AND DENYING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE [ECF NO. 29-2]** |

Before the Court is the Motion to Dismiss the Second Amended Complaint and Motion for a More Definitive Statement (ECF No. 29 ("Motion")) filed by Defendants DOT Filing and Compliance and Diana Lrtshikyan (together, "Defendants"). Defendants have also filed a Request for Judicial Notice in support of their Motion. (ECF No. 29-2 ("RJN")). Plaintiff DOT Operating Authority, Inc. ("Plaintiff"), opposes both the Motion and the RJN. (ECF No. 30 ("Opp.")). Defendants have filed two replies: one related to the Motion ("ECF No. 31 ("MTD Reply")); and one related to the RJN (ECF No. 31-1 ("RJN Reply")). Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds this Motion suitable for resolution without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion. The Court DENIES Defendants' Request for Judicial Notice.

The Court further DISMISSES without prejudice and with leave to amend Plaintiff's Second Amended Complaint as to Claims Two and Three, and as to claims against Defendant Lrtshikyan.

## I. BACKGROUND

On April 17, 2024, Plaintiff initiated this action, alleging in its first Complaint five causes of action related to Defendants' purported trademark, trade dress, and copyright infringement of Plaintiff's two websites. (ECF No. 1). On June 18, 2024, Defendants filed a Motion to Dismiss the Complaint and Motion for a More Definite Statement. (ECF No. 15). On July 9, 2024, Plaintiff filed its First Amended Complaint, amending as matter of course. (ECF No. 18). On July 30, 2024, pursuant to the Court's order on the Parties' stipulation thereto, Plaintiff filed its Second Amended Complaint. (ECF No. 23 ("SAC")).

The SAC alleges five causes of action against Defendants: (1) copyright infringement of Plaintiff's website www.oregontruckpermit.com, ("Oregon Website"), (SAC ¶¶ 44–55) ("Claim One")); (2) trademark infringement of the term Oregon Truck Permit, (SAC ¶¶ 56–64 ("Claim Two")); (3) trade dress infringement of Plaintiff's Oregon Website, (SAC ¶¶ 65–73 ("Claim Three")); (4) copyright infringement of Plaintiff's website www.ucr.online, ("UCR Website"), (SAC ¶¶ 74–85 ("Claim Four")); and (5) trademark infringement of the term UCR.online, (SAC ¶¶ 86–94 ("Claim Five")).

On August 27, 2024, Defendants filed the instant Motion to dismiss all five of the claims or, alternatively, to require Defendants to make a more definite statement in their SAC. (ECF No. 29). Defendants also requested judicial notice of fifteen exhibits in support of their Motion. *See generally* (RJN). Exhibits 1–4 contain screenshots of websites referenced in Plaintiff's Complaint. (RJN at 5–6). Exhibits 5–15 contain screenshots of information published on other websites. (*Id.* at 6).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed under Federal Rule of Civil Procedure

-2-

12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). When resolving a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted). When ruling on a motion under Rule 12(b)(6), the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "Bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements" are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 681 (internal quotation marks and citation omitted). Dismissal is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Federal Rule of Civil Procedure 12(e) allows a party to "move for a more definite statement of pleading to which a responsive pleading is allowed" when the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A motion for more definite statement is used to provide a remedy for an unintelligible pleading rather than a correction for lack of detail. *See Comm. for Immigrant*

1  *Rights of Sonoma Cnty. v. Cnty. of Sonoma,* 644 F.Supp.2d 1177, 1191 (N.D. Cal. 2009).
2  Accordingly, motions for a more definite statement are disfavored. *United States v. Sequel*
3  *Contractors, Inc.*, 402 F. Supp. 2d 1142, 1147 (C.D. Cal. 2005).

4  **III.   DISCUSSION**

5  Defendants contend that each of the five claims pleaded in the SAC fail to state a
6  claim upon which relief may be granted.  Claims Two and Five relate to purported
7  trademark infringement of Plaintiff's use of the terms Oregon Truck Permit and
8  UCR.online, respectively.  Claim Three relates to purported trade dress infringement of the
9  Oregon Website.  Claims One and Four relate to purported copyright infringement of the
10 Oregon Website and UCR Website, respectively.  Defendants additionally contend that all
11 claims against Defendant Diana Lrtshikyan ("Defendant Lrtshikyan") should be dismissed.
12 The Court first addresses each cause of action—trademark infringement, trade dress
13 infringement, and copyright infringement—in turn, and then the claims against Defendant
14 Lrtshikyan.

15 **A.   Claims Two and Five – Trademark Infringement**

16 Trademarks represent "a limited property right in a particular word, phrase, or
17 symbol." *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th Cir. 1992).
18 To prevail on a trademark infringement claim, a plaintiff must prove: "(1) that [the
19 plaintiff] has a protectable ownership interest in [a] mark; and (2) that the defendant's use
20 of the mark is likely to cause consumer confusion, thereby infringing upon the [plaintiff's]
21 rights to the mark." *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d
22 1118, 1124 (9th Cir. 2006).  Federal registration of a mark on the principal register
23 constitutes prima facie evidence of the validity of the mark.  15 U.S.C. § 1057(b).  If a
24 plaintiff alleges infringement of a federally-registered mark placed on the principal
25 register, then the plaintiff is entitled to a presumption that the mark is not generic. *Yellow*
26 *Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir.2005).

27 Courts have recognized four categories of marks with differing levels of potential
28 trademark protection.  The categories, starting from no protection to most protected, are:

"(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful terms." *Elliott v. Google, Inc.*, 860 F.3d 1151, 1155 (9th Cir. 2017); *Yellow Cab*, 419 F.3d at 927 (citing *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005)). "Generic terms are those used by the public to refer generally to the product rather than a particular brand of the product." *Brookfield Commc'ns. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1058 n.19 (9th Cir. 1999); *see also KP Permanent Make-Up*, 408 F.3d at 602 (Generic marks "identify the product, rather than the product's source."). Accordingly, generic terms cannot receive trademark protection because "they do not identify the source of a product." *Elliott*, 860 F.3d at 1155; *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999). Descriptive terms can receive trademark protection if they have "acquired 'secondary meaning' in the minds of consumers." *Filipino Yellow Pages*, 198 F.3d at 1147 (citation omitted). Arbitrary or fanciful marks are "automatically entitled to protection because they naturally serve to identify a particular source of a product." *Elliott*, 860 F.3d at 1155 (quoting *KP Permanent Make-Up*, 408 F.3d at 602).

To determine if a purported mark is generic, courts frequently apply the "who-are-you/what-are-you" test. *Yellow Cab*, 419 F.3d at 929 (citing *Filipino Yellow Pages*, 198 F.3d at 1147). If a purported mark answers the questions, "Who are you?," "Where do you come from?," or "Who vouches for you?," then the mark is not generic, because it does more than just identify the product, it also signifies "the product's source." *Id.* (citing *KP Permanent Make-up*, 408 F.3d at 602). But if a purported mark answers the question, "What are you?," then it may properly be considered generic, since it does no more than identify the product. *Id.*

Defendants contend that the terms Oregon Truck Permit and UCR.online are generic, and therefore are not entitled to protection. (ECF No. 29-1 at 14–18). Plaintiff contends that, "[w]hether a mark is generic cannot be decided at the pleading stage," because genericness is a question of fact. (Opp. at 8–9). Plaintiff alternatively contends it sufficiently alleged in its SAC that the terms Oregon Truck Permit and UCR.online are

distinctive because they acquired a secondary meaning, and therefore Plaintiff has stated a claim for trademark infringement. (Opp. at 10).

Plaintiff is correct that, "whether a mark is generic is a question of fact." *Yellow Cab*, 419 F.3d at 929 (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 840 (9th Cir.2001). However, that genericness is a question of fact alone does not end the inquiry for a court on a motion to dismiss. *See, e.g.*, *Beyond Blond Productions, LLC v. Heldman*, 2022 WL 2787536, at *3 (C.D. Cal. June 8, 2022) ("[T]he Court may make findings of fact to determine genericness based on the pleadings and judicially noticeable facts."); *U.S. Vessel Documentation v. Form Techs., LLC*, 2017 WL 8232081, at *3 (C.D. Cal. Sept. 21, 2017) ("[C]ourts are not precluded from determining fact-specific trademark questions on a motion to dismiss."); *see also Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 991 (9th Cir. 2025); *Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 789 (9th Cir.1981). Instead, a court must take as true all allegations in the SAC and, while resolving all reasonable inferences in favor of the plaintiff, determine whether the plaintiff's pleading is sufficient to state a claim for trademark infringement. *Solid 21, Inc. v. Breitling USA, Inc.*, 512 Fed. App'x 685, 687 (9th Cir. 2013) ("[T]he inquiry under Rule 12(b)(6) is into the adequacy of the pleadings, not the adequacy of the evidence."). If the facts pleaded do not state a claim for trademark infringement, then the court may dismiss the claim.

With that framework in mind, the Court considers each of Plaintiff's marks.

1. <u>Oregon Truck Permit</u>

Plaintiff has not alleged that Oregon Truck Permit is a registered mark. Therefore, Oregon Truck Permit is not entitled to a presumption that the mark is anything but generic. *Yellow Cab*, 419 F.3d at 928. Nevertheless, applying the "who-are-you/what-are-you" test to the facts in the SAC and drawing all reasonable inferences in favor of the Plaintiff, the Court finds that Plaintiff has not plausibly pleaded facts to demonstrate the term "Oregon Truck Permit" is not generic. Indeed, when the question "what are you," or, "what services can you provide to me?" is posed to "Oregon Truck Permit," the response is, "Oregon truck

permit." *See id.* The term "Oregon Truck Permit" communicates to users nothing more than what users may hope to obtain by visiting www.oregontruckpermit.com, which is a government-issued permit to use a truck that is valid in the state of Oregon. *See U.S. Vessel Documentation*, 2017 WL 8232081, at *3 (finding on a motion to dismiss that the term "U.S. Vessel Documentation" is generic and therefore not protectible because it "answers the question of what services Plaintiff provides").

Plaintiff does not address in its Opposition whether Oregon Truck Permit is a generic term. Instead, Plaintiff contends its SAC "alleged sufficient facts to state a claim for trademark infringement by asserting that" the mark is distinctive because it has achieved a secondary meaning. (Opp. at 10). But Plaintiff's contention does not rebut that the term is generic, because "[o]nce it has been established that a name is generic, that name is ineligible for protection regardless of any evidence of a secondary meaning." *Closed Loop Mktg., Inc. v. Closed Loop Mktg., LLC*, 589 F. Supp. 2d 1211, 1220 (E.D. Cal. 2008).

### 2. UCR.online

Plaintiff has not alleged that UCR.online is a registered mark, and therefore it is not entitled to a presumption that the mark is not generic. *Yellow Cab*, 419 F.3d at 928. Plaintiff does allege, however, that UCR.online is "a description of Unified Carrier Registrations," (SAC ¶ 29), and a printout of the UCR Website attached to the SAC shows the acronym "UCR" and the phrase "UCR.online" in close proximity to the phrase "Unified Carrier Registration." (ECF No. 23-4 at 2). The UCR Website further explains that, "if part of your business requires interstate travel, then you must submit your Unified Carrier Registration," as required by federal law. (*Id.*). Plaintiff alleges that Plaintiff uses the mark "UCR.online[] to identify its carrier support services." (SAC ¶ 29).

Applying the "who-are-you/what-are-you" test to the facts in the SAC and drawing all reasonable inferences in favor of the Plaintiff, the Court finds that Plaintiff has plausibly pleaded at this early stage that UCR.online is not generic. If one asks, "What are you?" to UCR.online, it may reasonably respond with something other than "UCR.online;" it could, for example, respond that it provides "unified carrier registration, on the internet." The

Court cannot determine at this early stage if the "consuming public" of Plaintiff's services may consider "UCR.online" to be generic.[1]  *Powerlineman.com, LLC v. Kackson*, 2007 WL 3479562, at *3 (E.D. Cal. Nov. 15, 2007) ("Whether 'powerlineman' or 'power lineman' is understood by the consuming public as the general name of an occupation is a question of fact inappropriate for resolution on a motion to dismiss.").  Therefore, the Court finds that Plaintiff has sufficiently alleged at this early stage that UCR.online is not a generic term.  *Intel Corp. v. Americas News Intel Pub., LLC*, 2010 WL 2740063, at *3 (N.D. Cal. July 12, 2010) ("Despite the potential strength of [the Defendant's] argument, the Court finds that dismissing [Plaintiff's] Complaint on this ground would be premature.").

Although the SAC does not contain copious detail, the Court also finds that Plaintiff has plausibly pleaded that, if UCR.online is a descriptive term, it has achieved secondary meaning to consumers.  Plaintiff's complaint contends that "[c]onsumers have come to exclusively associate UCR.online with Plaintiff in the limited market for truck permit services based on the amount and manner of Plaintiff's advertising of the service mark, the number of consumers that have been served by Plaintiff, and the intentional copying of UCR.online by others." (SAC ¶ 30).  In particular, Plaintiff contends that its advertising

---

[1] In conducting this analysis, Defendants ask the Court to ignore the ".online" portion of Plaintiff's alleged mark UCR.online, pointing to out-of-circuit cases that find that proposed marks that include "top-level domain" signifiers like ".com" or ".online," are not saved from genericness by their inclusion in the proposed mark. (ECF No. 29-1 at 18); *see, e.g.*, *Booking.com B.V. v. USPTO*, 915 F.3d 171, 185 (4th Cir. 2019).  However, both the Supreme Court and the Ninth Circuit have rejected such a bright-line approach, and so this Court declines to draw such a distinct line here.  *See USPTO v. Booking.com B.V.*, 591 U.S. 549, 560 (2020) ("[W]e do not embrace a rule automatically classifying [generic.com] terms as nongeneric."); *Advertise.com, Inc. v. AOL Advertising, Inc.*, 616 F.3d 974, 978 (9th Cir. 2010) (although "Adveritisng.com" consists of two generic terms, "we look to the mark as a whole and that the combination of generic terms may, in some instances, result in a distinctive mark.").  Instead, whether a term which includes ".com" is generic "depends on whether consumers in fact perceive that term as the name of a class, or, instead, as a term capable of distinguishing among members of the class." *Booking.com*, 591 U.S. at 561.

of UCR.online has generated "at least tens of thousands" of clicks, indicating "customers' recognition" of the UCR.online service mark. (*Id.*). These allegations are sufficient to provide the "grounds upon which" the claim of UCR.online's secondary meaning rests. *Twombly*, 550 U.S. at 545; *Spirit Clothing Co. v. N.S. Ents.*, 2013 WL 12144107, at *3 (C.D. Cal. July 23, 2013) ("Although the facts are weak, Plaintiff has pled sufficient facts to demonstrate secondary meaning.").

Finding at this stage that Plaintiff has plausibly pleaded a protectible ownership interest in the mark UCR.online only, the Court turns to the second element of trademark infringement: whether a Plaintiff plausibly pleads that a Defendant's use of the mark has caused consumer confusion. *Bazaar Del Mundo*, 448 F.3d at 1124. Defendants' contend that, "[e]ven if Plaintiff" can show that "UCR.Online ha[s] acquired distinctiveness, Plaintiff's claim fails because Defendants' use of the [] term[] constitutes fair use." (ECF No. 29-1 at 18). Defendants, however, point to no cases that support that this Court can determine whether Plaintiff's use constitutes fair use on a motion to dismiss. And the Court finds in this case that answering these fact-intensive questions based on the pleadings alone is improper at this stage. *See Powerlineman.com*, 2007 WL 3479562, at *4 (analysis of the fair use defense "is premature on a motion to dismiss, particularly given [its] factual nature").

Accordingly, the Court GRANTS Defendants' motion to dismiss as to Claim Two, and DISMISSES without prejudice and with leave to amend Claim Two to cure the deficiencies identified in this order. The Court DENIES Defendants' motion to dismiss as to Claim Five.

### B. Claim Three – Trade Dress Infringement

Defendants challenge Plaintiff's Claim Three for trade dress infringement, related to the Oregon Website, on the grounds that: (1) Plaintiff's SAC "only makes" conclusory allegations related to the Oregon Website's look and feel, which are not enough to state a claim for trade dress infringement; (2) Plaintiff's SAC fails to allege "protectible elements"

of trade dress; and, (3) because Plaintiff also brought a copyright claim over the Oregon Website, trade dress is an inappropriate vehicle for this claim. (ECF No. 29-1 at 20–25).

Trade dress is protected under the Lanham Act, 15 U.S.C. § 1125(a). To state a claim for trade-dress infringement, a plaintiff must plausibly plead "that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009). Functional product features are those which are "essential to the use or purpose of the article" or "affect[] the cost or quality of the article." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001). Secondary meaning may be obtained when "the purchasing public associates the trade dress with a particular source." *Id.* at 1262 (citation omitted). Courts are instructed to "exercise particular caution" when extending protection for trade dress "because such claims present an acute risk of stifling competition." *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp.2d 1168, 1174 (N.D. Cal. 2007) (internal quotation marks and citation omitted).

Courts in the Central District have recognized that, "[w]hether a website's design can constitute protectable trade dress under the Lanham Act is a fairly unsettled issue." *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1239 (C.D. Cal. 2014); *see also Salt Optics, Inc. v. Jand, Inc.*, 2010 WL 4961702, at *5 (C.D. Cal. Nov. 9, 2010) ("[T]he Ninth Circuit has yet to explicate the precise boundaries of trade dress law as applied to the internet."). But under "certain circumstances," the "look and feel" of a website may be considered trade dress. *Lepton Labs*, 55 F. Supp. 3d at 1239. "Trade dress is the composite tapestry of visual effects," and so "the mark must be examined as a whole, not by its individual constituent parts." *Clicks Billiards*, 251 F.3d at 1259. A "mere cataloguing of a website's features," however, is not sufficient to describe protectable trade dress because it "does not give defendants adequate notice of a plaintiff's trade dress claim." *Salt Optics*, 2010 WL 4961702, at *5. This deficiency is "exacerbated when a plaintiff, in a complaint,

also employs language suggesting that the listed components are some among many of the elements comprising the alleged trade dress." *Id.* (internal quotations and citation omitted).

The SAC states that the Oregon Website's trade dress is defined by certain "stylistic decisions *such as* the following: (a) formatting of logos, graphics, photographs, and text; (b) white background overlayed with a picture of a truck in an outdoor setting below the website's display of the trademark; (c) a user interface display to allow text input in requesting temporary permits; (d) the display of the service's contact information for telephone assistance; (e) the presentation of a list [*sic*] information required to apply for a permit; (f) [g]raphic of the state of Oregon; (g) [u]sing the color blue as the overall theme of the page; and (h) the particularized combination of all these elements." (SAC ¶ 16 (emphasis added)).

The Court finds that the SAC has not sufficiently pleaded the elements that comprise the Oregon Website's trade dress to provide Defendants with adequate notice of the claim. The SAC presents a non-exhaustive list of what Plaintiff considers to be trade dress of the Oregon Website, but explicitly suggests there are more elements by using the language "such as" when introducing the list of elements. *See Salt Optics*, 2010 WL 4961702, at *5 (finding that "trade dress allegations that are offered by way of illustration, not by limitation," are insufficient to give adequate notice of what constitutes Plaintiff's alleged trade dress). Further, the SAC's incomplete catalogue of trade dress elements is not sufficient to convey to Defendants what elements of the website constitute the "look and feel" of Plaintiff's website. *Lepton Labs*, 55 F. Supp. 3d at 1239. Assessing the list as a whole—including the non-functional elements—the SAC appears to merely describe a website with interactive features, listed contact information, a white background and a picture of a truck, "the color blue as the overall theme," and a graphic of the state of Oregon. This result does not create an "overall visual impression" that is sufficient to state a trade dress claim. *Clicks Billiards*, 251 F.3d at 1259; *see also Thumbtack, Inc. v. Liaison, Inc.*, 2024 WL 235172, at *7 (N.D. Cal. Jan. 22, 2024) (finding that a non-exhaustive list of

elements that does not convey the "look and feel" of the website is insufficient to claim trade dress infringement).

Plaintiff contends in its Opposition that the SAC "provid[es] charts identifying examples of the trade dress infringement," comparing the Oregon Website to Defendants' website that purportedly has the same "look and feel" of the Oregon Website. (Opp. at 12). The comparison charts, however, are not accompanied by any explanatory text and merely present side-by-side analogous screenshots of webpages from the Oregon Website and Defendants' website. *See, e.g.*, (SAC ¶ 25). Such a presentation is not sufficient to adequately confer upon Defendants enough notice for what Plaintiff contends is a trade dress violation. *See Tangle*, 125 F.4th at 999 ("merely providing photographs of some products and partial descriptions is insufficient" to plead a claim of trade dress infringement).

Although Plaintiff contends this Court should follow the example of its sister court in *Lepton Labs*, where the court found that a "list of items" purportedly constituting Plaintiff's trade dress was sufficient to state a claim, this Court declines to do so. 55 F. Supp. 3d at 1240. Unlike the list presented in *Lepton Labs*, the SAC begins its list with the words "such as" to indicate that the Oregon Website's trade dress includes certain stylistic and design elements not disclosed in the SAC. *See* (SAC ¶ 16). Compare *Lepton Labs,* 55 F. Supp. 3d at 1240 (acknowledging that the pleading method of listing a catalog of the websites features is something other courts have found insufficient to plead trade dress, but stating the court was hesitant "to decry this pleading method—at least where [the] plaintiff ha[d] not suggested that the components [we]re only some among many." (internal quotation marks and citation omitted)).

Under the circumstances presented here, Defendants do not have adequate notice of what constitutes Plaintiff's alleged trade dress on the Oregon website. Defendants' motion to dismiss is thus GRANTED as to Claim Three. Plaintiff's Claim Three is DISMISSED without prejudice and with leave to amend to cure the deficiencies identified in this order.

### C. Claims One and Four – Copyright Infringement

To establish copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act." *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (to establish copyright infringement, a plaintiff must show: "ownership of a valid copyright and [] copying of constituent elements of the works that are original."). Certificates of registration of copyrighted works are *prima facie* evidence of a valid copyright when the date of registration is within five years of the first publication of the copyrightable work. 17 U.S.C. § 410(c); *Thomson v. HMC Grp.*, 2014 WL 12589312, at *3 (C.D. Cal. Feb. 18, 2014). Certificates of registration also create a presumption of copyrightability of the work. *See Lizalde v. Advanced Planning Servs., Inc.*, 875 F. Supp. 2d 1150, 1160 (S.D. Cal. 2012).

Here, Plaintiff attached valid Certificates of Registration for both the Oregon Website, (ECF No. 23-1 ("Oregon Certificate")), and the UCR Website, (ECF No. 23-2 ("UCR Certificate")). The Oregon Certificate's date of first publication is within five years of its copyright registration. *See* (Oregon Certificate (Date of First Publication listed as August 12, 2019; Effective Date of Registration listed as November 21, 2023)). So, too, is the UCR Certificate's date of first publication. *See* (UCR Certificate (Date of First Publication listed as May 21, 2022; Effective Date of Registration listed as November 21, 2023)). Therefore, the certificates of registration create a presumption that Plaintiff holds valid copyrights in the Oregon Website and the UCR Website.

Even though the Oregon Certificate and the UCR Certificate create a presumption that Plaintiff holds valid copyright in both websites, Defendants contend the SAC does not specify what elements or portions within the websites are copyrighted and that, because deposit copies are not attached to the SAC, Defendants do not have notice of the elements or portions over which Plaintiff is claiming the copyright. (ECF No. 29-1 at 26–28). Plaintiff responds that "copies of the registrations and copyrighted materials are attached

to the SAC," putting Defendants on notice of the scope of its copyright claims. (Opp. at 16). The Court agrees with Plaintiff. While Defendants are right that deposit copies are not provided along with the Certificates of Registration in the exhibits to the SAC, the SAC alleges that its exhibits "contain[] the printout of the website, *which is the copyrighted work.*" (SAC ¶¶ 10, 28 (emphasis added)). Accepting all factual allegations as true and drawing all reasonable inferences from them, the Court concludes the exhibits contain the copyrighted work under which the Plaintiffs seek to claim copyright infringement. *See Thomson*, 2014 WL 12589312, at *5, n.3 (Feb. 18, 2014) ("Plaintiff [is] not required to provide a copy of the copyright deposit for a claim to be sufficiently definite to allow defendants to prepare a response.").

Defendants additionally contend that Plaintiff does not own a valid copyright because the purportedly copyrighted works "were not created by Plaintiff," and were instead created by the "governing entit[ies]" that issue the trucking permits available on Defendants' websites. (ECF No 29-1 at 27–28). The SAC, however, alleges the websites were "built by Plaintiff with its own original layout and content." (SAC ¶¶ 9, 27). Therefore, at this stage of the litigation, where the Court must accept all factual allegations as true, the Court declines to address the factual issue of whether Plaintiff created the purportedly copyrighted works on the Oregon Website and UCR Website. *See Thomson*, 2014 WL 12589312, at *5 ("Defendants' argument regarding copyrightability is premature, and should instead be raised at summary judgment.").

Thus, at this stage of the case, the Court finds that the SAC plausibly pleads ownership of a valid copyright.[2] The Court therefore DENIES Defendants' Motion as to Claims One and Four.

### D. Claims against Individual Defendant Diana Lrtshikyan

Defendants contend that Defendant Lrtshikyan should be dismissed from the action because, "beyond mere conclusions [] stating [Defendant] Lrtshikyan's personal

---

[2] Defendants do not challenge whether the SAC plausibly pleads the second element of copyright infringement.

involvement," (MTD Reply at 19), Plaintiff "fails to include any allegations against [Defendant] Lrtshikyan that relate to her taking any individual action rather than as CEO of Defendant DOT Filing and Compliance." (ECF No. 29-1 at 28).

The SAC alleges that Defendant Lrtshikyan is currently the "owner, Chief Executive Officer, Chief Financial Officer, and Secretary" of Defendant DOT Filing and Compliance. (SAC ¶ 4). The SAC further alleges Defendant Lrtshikyan "personally authorized, orchestrated, and approved trademark, trade dress, and copyright infringement," (*id.* ¶¶ 20, 38), and "acted culpably by knowingly assisting and taking affirmative steps to infringe the copyright, trademark, and trade dress" on the Oregon Website and UCR Website, (*id.* ¶¶ 19, 37). The SAC additionally alleges that Defendant Lrtshikyan "is the primary beneficiary of illicit profits" earned by Defendant DOT Filing and Compliance and had "access" to and "intimate knowledge of" the Oregon and UCR Websites during her previous employment with Plaintiff. (SAC ¶¶ 21, 39, 46, 73, 76). Plaintiff contends these allegations establish that Defendant Lrtshikyan was the "guiding spirit" of the wrongful conduct or "central figure" in the challenged corporate activity and, therefore, Plaintiff has properly pleaded Defendant Lrtshikyan's involvement in the alleged wrongdoing. (Opp. at 17–18 (citing *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1114 (C.D. Cal. 2010)).

Even when reviewing the SAC in the light most favorable to the Plaintiff, however, the allegations in the SAC amount to little more than conclusory statements that Defendant Lrtshikyan engaged in trademark, trade dress, and copyright infringement. The SAC does not allege sufficient facts regarding specific conduct engaged in by Defendant Lrtshikyan that demonstrates trademark, trade dress, and copyright infringement. *Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (quotation marks and citation omitted)). Plaintiff's allegations that Defendant Lrtshikyan had "access" to and "intimate knowledge" of the Oregon and UCR Websites do not show her involvement in the alleged wrongdoing, as the SAC makes no allegation

that Defendant Lrtshikyan took any specific acts as an employee of Plaintiff to copy or infringe upon the Oregon and UCR Websites. *See id.* at 679 ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown [as required by Rule 8]—that the pleader is entitled to relief." (quotation marks and citation omitted)).[3]

The Court therefore GRANTS Defendants' motion to dismiss as to the claims against Defendant Lrtshikyan and DISMISSES the SAC as to Defendant Lrtshikyan without prejudice and with leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the Motion to Dismiss as to Claims One, Four, and Five, and GRANTS the Motion to Dismiss as to Claims Two and Three. The Court further GRANTS the Motion to Dismiss as to Defendant Lrtshikyan. The Court therefore DISMISSES the SAC as to Claims Two and Three, and as to all Claims brought against Defendant Lrtshikyan, without prejudice and with leave to amend.[4] The Court grants Plaintiff fourteen (14) calendar days from the date of this Order to file an amended pleading, if any, that cures the deficiencies identified in this Order.

---

[3] Because the Court finds the matters about which Defendants requests the Court take judicial notice are not necessary to the decision on this Motion, it DENIES the requests for judicial notice. *See, e.g.*, *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 976 (9th Cir. 2006) (district court may deny judicial notice of documents it does not rely upon and which are not pertinent or necessary to its ruling on motion to dismiss).

[4] Defendants request this Court dismiss the SAC without leave to amend. (ECF No. 29-1 at 29). However, Defendants alternatively moved for a more definite statement, which would in practice result in amendment of the SAC if the Court were to grant the motion for a more definite statement. Further, a number of the Court's conclusions in this Order rest on deficiencies of Plaintiff's SAC, which at this time the Court cannot say could not be "saved by amendment." *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment.").

The Court hereby DENIES as MOOT Defendants' alternate Motion for a More Definite Statement.

**IT IS SO ORDERED.**

DATED: March 18, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE